### FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES LEE REYNOLDS,
   *Petitioner-Appellant,*

   v.

J. E. THOMAS, warden,
   *Respondent-Appellee.*

No. 08-35810

D.C. No.
3:07-CV-01244-ST

OPINION

Appeal from the United States District Court
for the District of Oregon
Janice M. Stewart, Magistrate Judge, Presiding

Argued and Submitted
May 5, 2009—Portland, Oregon

Filed May 7, 2010

Before: William A. Fletcher, Carlos T. Bea and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge W. Fletcher

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, for
the appellant.

Suzanne A. Bratis, Assistant United States Attorney, for the appellee.

---

## OPINION

IKUTA, Circuit Judge:

Charles Lee Reynolds appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241, contending that the Federal Bureau of Prisons ("BOP") erred by refusing to issue an order under 18 U.S.C. § 3621(b) that retroactively (*nunc pro tunc*) designated the Montana state prison where Reynolds served his state sentence as the place where he began serving his federal sentence. Such an order, in effect, would have deemed that Reynolds's federal sentence ran concurrently with his state sentence, and thus would have shortened Reynolds's term of federal imprisonment by the amount of time he served in state prison. We affirm the district court's denial of the petition.

## I

On October 3, 2002, Reynolds attempted unsuccessfully to cash a forged cashier's check at a bank in Ennis, Montana. Notified by the bank, state police arrived, and Reynolds fled in his car. Following a high-speed chase, the police captured Reynolds and booked him in the Madison County, Montana, jail in the early hours of October 4. His booking sheet indicated that his arrest was "pursuant to a warrant." Five hours after booking, Reynolds's arresting officer received a copy of a federal warrant issued for Reynolds, which listed offenses relating to identity theft and interstate flight to avoid prosecution. On October 29, the county attorney for Madison County charged Reynolds by Information with forgery, identity theft, and violation of the terms of three suspended sentences. The county attorney for Lewis and Clark County, Montana, filed additional charges against Reynolds shortly thereafter.

Before Reynolds was tried or convicted in state court, the federal district court in Montana issued a writ of *habeas corpus ad prosequendum*, which released Reynolds to federal custody to answer federal criminal charges. On May 22, 2003, Reynolds pleaded guilty to identity theft, 18 U.S.C. § 1028(a)(7), and bank fraud, 18 U.S.C. § 1344. The district court judge, Judge Charles Lovell, sentenced Reynolds to 71 months' imprisonment for each count, with the sentences to be served concurrently. That same day, Reynolds was returned to state custody.

Reynolds pleaded guilty to charges in Lewis and Clark County on July 24, 2003. The state court sentenced Reynolds to a term of fifteen years in state prison, with five years suspended. The state judge ordered Reynolds's sentence for certain charges to run concurrently "with the federal sentence imposed on defendant." Four months later, the state court in Madison County sentenced Reynolds to an additional five years in state prison, and likewise specified that this sentence should "be served concurrently with Defendant's sentences in Lewis and Clark County, Montana, and U.S. District Court to the extent which they overlap." Reynolds served 51 months in state prison.

While in state prison, Reynolds petitioned the BOP to designate *nunc pro tunc* the Montana state prison as the "place in which he may serve his federal sentence" pursuant to 18 U.S.C. § 3621(b).[1] Reynolds sought a declaration that his fed-

---

[1]Section 3621(b) states, in pertinent part:

(b) Place of Imprisonment.— The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

eral sentence began when he was first incarcerated in state prison. In support of his request, Reynolds noted that the Montana courts had ordered that Reynolds's state sentence was to run concurrently with his federal sentence. The BOP determined, however, that the federal court had not ordered that his sentences run concurrently, and confirmed this interpretation with Judge Lovell. The BOP denied Reynolds's request in December 2004.

On December 22, 2006, Reynolds was released from state prison and transferred to federal custody. He thereafter renewed his request for retroactive designation of the state prison as the place where he began serving his federal sentence. In response, the BOP again asked Judge Lovell to indicate "the Court's position on a retroactive designation" in Reynolds's case. In its letter, the BOP explained that if Reynolds's request were granted, he would have a projected release date of July 17, 2008; otherwise, his projected release date would be February 17, 2012. In a letter dated October 2007, Judge Lovell stated that he had "no comment on [the BOP's] consideration of Defendant Reynolds for retroactive designation of the state institution for the service of the federal sentence."

The BOP denied Reynolds's request in November 2007 based on the factors listed in 18 U.S.C. § 3621(b), specifically

---

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

  (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

  (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28.

the nature and circumstances of Reynolds's offense, Reynolds's history and characteristics, and Judge Lovell's response. Reynolds appealed this administrative determination. The BOP denied the appeal, stating that "[t]he federal judgment was silent regarding the execution of your service. As such, multiple terms of imprisonment imposed at different times are deemed consecutive unless the court dictates otherwise." Furthermore, the BOP explained, Reynolds did not merit *nunc pro tunc* designation of the state prison under the factors enumerated in 18 U.S.C. § 3621(b). Reynolds's actions (as noted by the federal sentencing court) posed a "significant danger to the community," Reynolds's flight from state authorities created a "substantial risk of death or serious bodily injury to others," and he had attempted to influence a witness. Furthermore, the BOP noted that in light of "the career nature of [his] criminal activities, lengthy criminal history to include violence, and the characteristics of the instant offense, the likelihood of [his] recidivism is highly probable."

Reynolds filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. The district court denied the petition, and Reynolds timely appealed. In November 2009, while this appeal was pending, Reynolds renewed his request for a *nunc pro tunc* designation of the Montana state prison where he had been incarcerated as the place where he began service of his federal sentence. The BOP contacted Judge Lovell for a third time; this time, the judge responded that "since the objectives of sentencing have apparently been largely met in his case, I have no objections to your suggestion for a retroactive designation." On November 18, 2009, the BOP granted Reynolds's request. Based on this ruling, the BOP determined that Reynolds was entitled to immediate release. His five-year term of supervised release thus began on November 20, 2009.

## II

Before addressing the merits of Reynolds's petition, we must address the government's argument that Reynolds's

challenge to the BOP's November 2007 decision is moot because it was superseded by the BOP's November 2009 decision.

**[1]** We conclude that Reynolds's petition is not moot. A challenge to a term of imprisonment is not mooted by a petitioner's release where the petitioner remains on supervised release and "[t]here is a possibility that [petitioner] could receive a reduction in his term of supervised release under 18 U.S.C. § 3593(e)(2)." *Mujahid v. Daniels*, 413 F.3d 991, 995 (9th Cir. 2005); *accord Arrington v. Daniels*, 516 F.3d 1106, 1112 n.4 (9th Cir. 2008); *United States v. Verdin*, 243 F.3d 1174, 1179 (9th Cir. 2001). Reynolds is currently scheduled to remain on supervised release until 2014. In support of his petition challenging the BOP's November 2007 decision, Reynolds claims he is entitled to a recalculation of his release date to July 17, 2008, and asserts that he was overincarcerated for sixteen months: from July 17, 2008 to his actual release date of November 20, 2009. A court could consider this alleged period of over-incarceration under 18 U.S.C. § 3583(e) as a factor weighing in favor of reducing the term of supervised release. *See United States v. Johnson*, 529 U.S. 53, 60 (2000). Furthermore, because the BOP's November 2009 decision did not recalculate Reynolds's release date to July 17, 2008, it did not give Reynolds the relief he requested in his petition for habeas corpus. Accordingly, we reject the government's contention that Reynolds's appeal is moot.

## III

We turn to the merits of Reynolds's claim that the BOP erred in November 2007 when it denied his request for *nunc pro tunc* designation of the Montana prison as the facility for service of his federal sentences. We review de novo the denial of a petition filed under 28 U.S.C. § 2241, *Bowen v. Hood*, 202 F.3d 1211, 1218 (9th Cir. 2000), reviewing underlying factual findings for clear error, *McNeedly v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003).

## A

[2] We begin with a brief overview of the law applicable to federal courts and the BOP's determination of whether sentences should be served consecutively or concurrently. Under 18 U.S.C. § 3584, "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."[2] A court has the discretion, however, to order that multiple terms of imprisonment run concurrently when the court is imposing multiple terms on a defendant at the same time or is sentencing a defendant already subject to an undischarged term of imprisonment. *Id.* The discretion granted by this provision is limited in two respects. First, "concurrent sentences imposed by state judges are nothing more than recommendations to federal officials." *Taylor v. Sawyer*, 284 F.3d 1143, 1150 (9th Cir. 2002). Accordingly, "the court" referenced in § 3584(a) refers only to federal courts. Second, we have held that even federal courts "cannot order a sentence to run either concurrently or consecutively to a non-existent term." *Id.*; *see* 18 U.S.C.

---

[2]Section 3584 provides, in relevant part:

(a) Imposition of concurrent or consecutive terms.— If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

(b) Factors to be considered in imposing concurrent or consecutive terms.— The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553 (a).

6820                   REYNOLDS v. THOMAS

§ 3584(a). In other words, a federal court cannot order a sentence to be served concurrently with a sentence, including a state sentence, that has not yet been imposed. *Id.*

During the sentencing process, federal courts must also consider the United States Sentencing Guidelines. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Section 5G1.3 of the Guidelines provides that under certain circumstances, if a defendant is already subject to an undischarged term of imprisonment for "relevant conduct," the sentencing court should adjust a defendant's sentence for the crime of conviction to take into account the time already served and should order the sentence to run concurrently with the remaining undischarged term of imprisonment.[3] This Guideline also includes the Sentencing Commission's policy

---

[3]Section 5G1.3(b)-(c) provides:

(b)    If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

    (1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

    (2)    the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c)    (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

statement that where there is an undischarged term of imprisonment, the district court should exercise its discretion "to achieve a reasonable punishment" for the offense. § 5G1.3(c).

Once the district court has discharged its sentencing function, the defendant is committed to the custody of the BOP, which has the authority to calculate the defendant's sentences in accordance with the district court's orders, as well as to designate the facility for service of such sentences. By statute, a federal sentence "commences on the date the defendant is received in custody" at the "official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). The BOP has the authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). In exercising this designation authority, the BOP is directed to consider a range of factors, including "the nature and circumstances of the offense," "the history and characteristics of the prisoner," "any statement by the court that imposed the sentence" including any recommendation as to the type of correction facility, and "any pertinent policy statement" of the Sentencing Commission. *Id.*

**[3]** On its face, § 3621(b) gives the BOP only the administrative responsibility to identify the facility in which a federal prisoner will serve out the sentence imposed by the district court. The BOP has interpreted this statute, however, as authorizing it to issue a *nunc pro tunc* order designating a state prison as the facility for service of a federal sentence "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system." BOP Program Statement 5160.05 (January 16, 2003). Program Statement 5160.05 explains, "[w]hen a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed the Bureau implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence." The BOP will also consider "an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence

as a request for a nunc pro tunc designation." The Program
Statement requires the BOP to consider the inmate's request,
and sets forth the procedure the BOP must follow in determin-
ing whether to designate a state prison for (in effect) concur-
rent service of a federal sentence. Such procedures require the
BOP to ask the federal sentencing court if it has any objec-
tions to such designation.

We approved the BOP's approach under this Program
Statement in *Taylor v. Sawyer*, 284 F.3d at 1148-49.[4] In that
case, we considered and rejected the argument that the Pro-
gram Statement's grant of authority to the BOP to issue a
*nunc pro tunc* designation was inconsistent with § 3584 and
thus invalid. *Id.* Instead, joining other circuits that had consid-
ered the issue, we concluded that "such a designation by the
BOP is plainly and unmistakably within the BOP's discre-
tion." *Id.* at 1149; *see McCarthy v. Doe*, 146 F.3d 118, 123
(2d Cir.1998) (holding that the BOP has the discretion to
grant or deny a request for *nunc pro tunc* relief); *Barden v.
Keohane*, 921 F.2d 476, 478 (3d Cir. 1990) (same); *see also
Romandine v. United States*, 206 F.3d 731, 738 (7th Cir.
2000) (expressing agreement with "*McCarthy*'s bottom line"
on this point). Finally, we rejected the defendant's arguments
that such a conclusion was contrary to the doctrine of dual
sovereignty, principles of comity and federalism, and the Full
Faith and Credit Clause. *Taylor*, 284 F.3d at 1151-53.

## B

Reynolds raises two arguments on appeal. First, notwith-
standing our decision in *Taylor*, he asserts that the BOP had
an obligation to comply with the state court's determination

---

[4]The BOP replaced Program Statement § 5160.04 (April 19, 2000) ref-
erenced in *Taylor*, 284 F.3d at 1143, with the current Program Statement
§ 5160.05 in January 2003 in order to comply with a federal "plain lan-
guage" initiative. The two program statements are identical in all material
respects.

that Reynolds's sentences should run concurrently with his federal sentence. Second, he asserts that the BOP's denial of his request for *nunc pro tunc* designation of the Montana prison was arbitrary and capricious, primarily because the BOP based its denial on the historical accident that Reynolds was sentenced by the federal court before the state court. We address these arguments in turn.

**1**

Reynolds begins with a two-part argument as to why the BOP erred in ignoring the state court's orders. Reynolds first points to § 3584(a), which states that multiple terms of imprisonment imposed at different times "run consecutively unless the court orders that the terms are to run concurrently." Because the state court here ordered the state and federal terms to run concurrently, Reynolds argues, the BOP was bound by this ruling. The BOP's decision to the contrary, Reynolds contends, was an improper assumption of judicial authority to determine the length of his sentences, rather than a proper exercise of discretion under § 3126(b). Thus, the BOP's actions contravened Congressional intent and the principles of federalism and separation of powers.

**[4]** Reynolds's arguments fail because they are contrary to *Taylor*, in which we upheld the BOP's authority to decline to make a *nunc pro tunc* designation of a state prison notwithstanding a state court's contrary order. 284 F.3d at 1149. In *Taylor*, a defendant in state pre-trial custody appeared before a federal court on a *writ ad prosequendum*, and was sentenced to a term of imprisonment on a federal offense. *Id.* at 1146. Returned to state custody, the defendant was sentenced to a term of state imprisonment to run concurrently with the federal sentence. *Id.* The federal sentencing court denied the defendant's request for an order giving him credit for time served in state prison, and also declined to recommend that the BOP issue a *nunc pro tunc* order designating the state prison as the place to serve his federal sentence. *Id.* Affirming

the denial of the defendant's petition for habeas corpus, we held that § 3584(a) did not impose any obligation on the BOP to implement a state's concurrency order. *Id.* at 1149-50. Further, we held that the BOP had discretion under § 3621(b) and its Program Statement to decline to issue such an order, explaining that "we cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy." *Id.* at 1149.

Reynolds attempts to distinguish *Taylor* on the ground that the federal sentencing court in that case expressly stated its intent that the federal sentence run consecutively to the state sentence. Reynolds argues that under such circumstances, the state court's intent cannot bind a federal court, and the BOP was required to follow the federal court's order that its sentence run consecutively. Because the federal court in his case did not make such an order, Reynolds asserts that the state court's order bound the BOP.

**[5]** We disagree. Notwithstanding factual differences, *Taylor* forecloses Reynolds's argument. As in this case, the defendant in *Taylor* argued "that the BOP, in administering a federal sentence, should not be allowed to disregard a state court's alleged order of concurrency," and that the BOP's action was invalid because it was "preempting what he claims are rights of the state court." *Id.* at 1151. We rejected those arguments as having "no persuasive support in constitutional principle, consistent practice or established case law." *Id.* Given our ruling in *Taylor*, we must conclude that the BOP had discretion to reject Reynolds's request for a *nunc pro tunc* designation notwithstanding the state court's order, and such a determination was not inconsistent with § 3584(a).

In light of this conclusion, we need not reach Reynolds's argument that the BOP is powerless to designate a state prison *nunc pro tunc* on its own authority in light of contrary Congressional intent, separation of powers principles, and federalism concerns. Because the BOP did not order a *nunc pro tunc*

REYNOLDS v. THOMAS                    6825

designation of the state prison in this case, and it is that failure
that Reynolds here challenges, any question about the scope
of the BOP's authority to do so is not properly before us. In
any event, *Taylor* held that "such a designation by the BOP
is plainly and unmistakably within the BOP's discretion." *Id.*
at 1149.

**2**

Although it is not entirely clear, Reynolds's second argu-
ment appears to be that, but for the historical accident that
Reynolds's federal sentence was imposed first, his state and
federal sentences would have run concurrently by force of
law. Under these circumstances, Reynolds argues, the BOP's
denial of Reynolds's requested *nunc pro tunc* designation was
arbitrary, capricious, an abuse of discretion, and contrary to
law. Reynolds provides three reasons why his sentences
should have been imposed in a different order, and should
now be deemed to run concurrently.

First, Reynolds claims that his original arrest in October
2002 was under a federal warrant, and the district court erred
in holding otherwise. Therefore, Reynolds argues, he was in
primary federal jurisdiction at the time the federal district
court issued its sentence and he should have served the federal
sentence first. If this had occurred, Reynolds would then have
received credit for the entire federal sentence because the
state court ordered the state sentence to be served concur-
rently.

We need not reach the question whether it would be an
abuse of discretion to deny a *nunc pro tunc* designation under
these circumstances, because here the district court did not
clearly err in determining that Reynolds was under the pri-
mary jurisdiction of the state at the time of his federal convic-
tion. "Normally, the sovereign which first arrests an
individual acquires priority of jurisdiction for purposes of
trial, sentencing, and incarceration." *United States v. Warren*,

610 F.2d 680, 684-85 (9th Cir. 1980). Although both state and
federal arrest warrants were outstanding for Reynolds, his
arresting officers did not receive a copy of the federal arrest
warrant until 9:00 a.m. on October 4, five hours after Reyn-
olds was booked into Madison County jail. Additionally, the
federal district court brought Reynolds before it pursuant to a
writ of *habeas corpus ad prosequendum*, a further indication
that the state had primary jurisdiction over him. *See, e.g.*,
*Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir. 1991); *Gun-
ton v. Squier*, 185 F.2d 470, 470-71 (9th Cir. 1950). More-
over, even were we to assume that a state's prosecutorial
delay might result in an abdication of primary jurisdiction, *see
Buggs v. Crabtree*, 32 F. Supp. 2d 1215, 1220 (D. Or. 1998),
no such delay occurred here. Reynolds was taken into federal
custody less than sixty days after his arrest and was sentenced
by state court approximately two months after being returned
to federal custody.

Reynolds's second argument is that the BOP acted arbitrar-
ily and capriciously in failing to consider that the federal sen-
tence would have run concurrently with the state sentence
under § 5G1.3 if the state sentence had been imposed first.
Reynolds explains that had the state sentence been pending
when he appeared before the district court, § 5G1.3 would
have led the federal sentencing court to impose a federal sen-
tence that ran concurrently with the remaining undischarged
term of state imprisonment. According to Reynolds, the
BOP's failure to take into account this direction constituted an
abuse of discretion and violated the Sentencing Commission's
policy direction that, where there is an undischarged term of
imprisonment, the district court should exercise its discretion
"to achieve a reasonable punishment" for the offense.
§ 5G1.3(c).

This argument is unavailing, even assuming the state
court's sentence was for "relevant conduct" and otherwise
met the criteria in § 5G1.3. The record establishes that the
BOP carefully and thoroughly reviewed the factors set forth

REYNOLDS v. THOMAS                    6827

in its Program Statement before denying Reynolds's request. There is no evidence that Reynolds asked the BOP to consider § 5G1.3 in connection with his request for *nunc pro tunc* designation. Even if Reynolds had brought § 5G1.3 to the BOP's attention, that Guideline is inapplicable by its own terms, *see supra*; the BOP's failure to follow an inapplicable Guideline is not an abuse of discretion.

**[6]** Finally, Reynolds asserts that the BOP acted arbitrarily and capriciously because it incorrectly interpreted the federal court's silence as intent that Reynolds's state and federal sentences run consecutively. Had the BOP not made such an error, Reynolds argues, it would have issued a *nunc pro tunc* designation. However, we see no error on the BOP's part. Section 3584(a) explicitly states that multiple terms of state and federal imprisonment run consecutively absent a court order that the sentences run concurrently. 18 U.S.C. § 3584(a). Here there was no federal court order indicating that Reynolds's sentences should run concurrently. By denying Reynolds's request, the BOP did no more than enforce the plain terms of § 3584(a). Accordingly, the BOP acted within its broad discretion under § 3621(b) and the Program Statement to grant or deny a request for *nunc pro tunc* relief after full and fair consideration.

**AFFIRMED.**

_____

W. FLETCHER, Circuit Judge, concurring:

I would also affirm the district court's denial of the writ of habeas corpus. The federal Bureau of Prisons ("BOP") acted properly in construing the sentencing judge's answer to the BOP's letter, in which the judge refused to express a preference, as an indication that a consecutive sentence was appropriate. I write separately to express my concern that the

BOP's *nunc pro tunc* practice raises serious separation of powers questions.

## I.  Calculation of Sentences

In order to understand why the BOP's practice raises separation of powers concerns, it is necessary to discuss at some length the manner in which sentences are determined and calculated. A federal judge determines the length of a term of imprisonment for a person convicted of a federal crime. *See* 18 U.S.C. §§ 3551, 3553. Included in that determination is a decision whether terms of imprisonment will be served concurrently or consecutively. When choosing between concurrent and consecutive terms, a federal judge must "consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in [18 U.S.C.] section 3553(a)." 18 U.S.C. § 3584(b). The factors set forth in § 3553(a) include "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment . . . ; to afford adequate deterrence . . . ; to protect the public from further crimes of the defendant"; and "the need to avoid unwarranted sentence disparities."

The federal Bureau of Prisons incarcerates persons convicted of federal crimes. *See* 18 U.S.C. § 3621. Among its other responsibilities, the BOP calculates the length of time a person spends in federal prison in fulfilling the sentence imposed by a federal judge. In *United States v. Wilson*, 503 U.S. 329 (1992), the Supreme Court held that the BOP is responsible for calculating the amount of credit, if any, a federal prisoner should receive based on time previously served under another sentence, including a sentence served in state prison. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for

which the defendant was arrested after the commission of the offense for which the sentence was imposed[ ] that has not been credited against another sentence.").

A rule of construction for determining whether a federal sentence is concurrent or consecutive with another sentence is provided in 18 U.S.C. § 3584(a):

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

The first sentence of § 3584(a) has two clauses that address distinct situations. The first clause refers to multiple terms of imprisonment imposed on a defendant at the same time; this clause applies when a judge sentences a defendant in the same criminal proceeding for multiple violations of federal law. The second sentence of § 3584(a) provides that in this situation, if the federal judge fails to specify either concurrent or consecutive sentences, the sentences are concurrent. The second clause of the first sentence refers to a term of imprisonment imposed when a defendant has already been sentenced in a separate state or federal proceeding, and when that earlier term has not yet been fully served. The third sentence of § 3584(a) governs this situation, providing that if the federal judge fails to specify either a concurrent or consecutive sentence, the federal sentence is consecutive. The third sentence may be read more broadly to govern, in addition, the situation in which the federal judge imposes a sentence and another

sentence is imposed afterwards. In these situations, if the federal judge fails to specify, the sentences are consecutive.

The federal courts of appeals have split on the question of whether a federal sentencing judge has the authority to dictate whether a sentence is to run concurrently or consecutively with respect to a yet-to-be imposed sentence. The Eighth, Tenth and Eleventh Circuits have held that the judge has this authority. *See United States v. Mayotte*, 249 F.3d 797, 798-99 (8th Cir. 2001) (per curiam); *United States v. Williams*, 46 F.3d 57, 58-59 (10th Cir. 1995); *United States v. Ballard*, 6 F.3d 1502, 1510 (11th Cir. 1993). The Second, Fourth, Sixth and Seventh Circuits, as well as our own, have held that the judge does not have this authority. *See United States v. Donoso*, 521 F.3d 144, 149 (2d Cir. 2008); *United States v. Smith*, 472 F.3d 222, 225-26 (4th Cir. 2006); *Taylor v. Sawyer*, 284 F.3d 1143, 1148 (9th Cir. 2002) (citing *United States v. Neely*, 38 F.3d 458, 460-61 (9th Cir. 1994); *United States v. Clayton*, 927 F.2d 491, 492 (9th Cir. 1991)); *Romandine v. United States*, 206 F.3d 731, 737-38 (7th Cir. 2000); *United States v. Quintero*, 157 F.3d 1038, 1039-40 (6th Cir. 1998). The Fifth Circuit has held that the judge has this authority with regard to a yet-to-be imposed state sentence, but not a federal sentence. *See United States v. Quintana-Gomez*, 521 F.3d 495, 498 (5th Cir. 2008); *United States v. Brown*, 920 F.2d 1212, 1217 (5th Cir. 1991), *abrogated on other grounds by United States v. Candia*, 454 F.3d 468, 472-73 (5th Cir. 2006).

In circuits where the federal sentencing judge does not have the authority to dictate whether the federal sentence is to run concurrently or consecutively with a yet-to-be imposed sentence, the default is that the two sentences run consecutively. *See Romandine*, 206 F.3d at 737-38; *see also Taylor*, 284 F.3d at 1149. The same default result is achieved in circuits where the judge has the authority, if the judge fails to specify a concurrent or consecutive sentence. See 18 U.S.C. § 3584(a) (third sentence). The default result can frustrate the desire of

a federal sentencing judge. This is clearly so in circuits where
the federal sentencing judge would impose a concurrent sen-
tence with the yet-to-be imposed sentence but has no author-
ity to do so. This can also be so in circuits where the federal
sentencing judge has the authority to impose a concurrent sen-
tence but at the time of sentencing has insufficient informa-
tion about the circumstances of the other crime and the yet-to-
be imposed sentence for that crime to decide whether a con-
current sentence is appropriate.

If the second sentencing judge is a federal judge, the desire
of the initial sentencing judge to impose a concurrent sentence
may sometimes be effectuated. In that circumstance, the sec-
ond judge has the authority to impose a sentence that will run
concurrently with the first. The second judge may or may not
have the same view of the case, and of the appropriate sen-
tence, as the first judge. But at least the second judge will be
applying the same federal sentencing criteria as the first
judge, and may reach the same answer the first judge would
have reached.

When the second sentencing judge is a state judge, the
desire of the initial sentencing judge to impose a concurrent
sentence may also be effectuated; but that possibility is more
remote than in the case where the second sentencing judge is
federal. The problem arises when the state authorities have
primary jurisdiction but the federal sentence is imposed first.
The federal circuits are unanimous in holding that a state
judge has no authority to require that a state sentence of
imprisonment be served concurrently with a previously
imposed federal sentence. *See Taylor*, 284 F.3d at 1151-52
("[T]he BOP does not need to abide by a state's express
desire to have its sentence run concurrent to a previously
imposed federal sentence."); *see also Fegens v. United States*,
506 F.3d 1101, 1104 (8th Cir. 2007) ("It is well-settled that
the state court's intent is not binding."); *Abdul-Malik v.
Hawk-Sawyer*, 403 F.3d 72, 73 (2d Cir. 2005). That is, there
is nothing a state court judge can do to require federal authori-

ties to credit time served on a state sentence against a federal
sentence. The state judge may take a previously imposed fed-
eral sentence into account by imposing a shorter state sen-
tence than the judge otherwise would, thereby achieving a de
facto concurrent sentence. But the state judge, for reasons of
state law or policy, may be unable to do so even if that judge
so desires.

So far as I am aware, there are no statistics showing how
often a federal sentencing judge desires to impose a sentence
that will run concurrently with a yet-to-be-imposed sentence
but is unable to achieve that result. Similarly, I am not aware
of statistics showing how often, in cases in which the first
judge is federal and the second judge is state, both judges
desire to impose concurrent sentences but neither judge is
able to achieve that result. But even without reliable statistics,
it is obvious that under the law, at least as so far described,
there is a problem in effectuating the sentencing intention of
a federal judge when he or she is the first judge to impose
sentence.

In 1991, the Third Circuit devised an ingenious solution to
the problem posed when the state has primary jurisdiction but
the federal sentence is imposed before the state sentence. In
*Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991), the court
interpreted 18 U.S.C. § 3621(b) to permit the federal BOP to
issue a *nunc pro tunc* order designating state prison as the
place for service of a federal sentence, thereby achieving a
concurrent state and federal sentence beginning on the date
specified in the order.

Section 3621(b) provides:

**Place of imprisonment.**—The Bureau of Prisons
shall designate the place of the prisoner's imprison-
ment. The Bureau may designate any available penal
or correctional facility that meets minimum stan-
dards of health and habitability established by the

Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the

Bureau determines has a treatable condition of sub-
stance addiction or abuse.

18 U.S.C. § 3621(b).

On its face, § 3621(b) appears to direct the BOP to deter-
mine only where a prisoner may be housed. The BOP may
designate a non-federal facility, so long as that facility meets
"minimum standards of health and habitability," and so long
as the BOP has determined that the facility is "appropriate and
suitable." Nowhere does § 3621(b) explicitly authorize the
BOP, in designating a non-federal facility, to determine *nunc
pro tunc* that time served in a state facility pursuant to a state
sentence has been served concurrently with a federal sentence
that was imposed earlier. However, the Third Circuit in *Bar-
den* read § 3621(b) to provide that authorization.

In *Barden*, habeas petitioner Barden sought credit against
his federal sentence for bank robbery, which he was then
serving, for time already served in state prison for robbery,
rape and kidnaping. The federal BOP refused, stating that it
had no authority to grant such credit. The Third Circuit dis-
agreed, writing:

> We agree with Barden that the federal government
> has the statutory authority [under 18 U.S.C.
> § 3621(b)] to make the *nunc pro tunc* designation
> Barden desires. . . . We do not pass upon Barden's
> contention that he is entitled to a favorable exercise
> of the broad discretion the Federal Bureau of Prisons
> (Bureau) has in acting on his request. Instead, we
> hold only that the federal authorities have an obliga-
> tion, on the peculiar facts before us, to look at Bar-
> den's case and exercise the discretion the applicable
> statute grants the Bureau to decide whether the state
> prison in which he served his sentence should be
> designated as a place of federal confinement *nunc
> pro tunc*.

921 F.2d at 478. The BOP responded to *Barden* by instituting a *nunc pro tunc* sentencing procedure set forth in its Program Statements 5160.05 and 5880.28.

The Supreme Court has never endorsed the *nunc pro tunc* procedure authorized by the Third Circuit in *Barden*. A year after the Third Circuit's decision in *Barden*, the Court held in *United States v. Wilson*, 503 U.S. 329 (1992), that the BOP has the authority under 18 U.S.C. § 3585(b) to perform the mathematical computation involved in determining the time a federal prisoner should be credited based on time served on another sentence. However, the *nunc pro tunc* procedure authorized in *Barden* goes well beyond the calculation involved in *Wilson*. Under the *nunc pro tunc* procedure, the BOP does not merely perform the computation involved in determining *how much* a federal sentence should be reduced on account of time already served under a separate concurrent sentence. Rather, under the *nunc pro tunc* procedure, the BOP makes the foundational decision of *whether* the separate sentence should be concurrent.

## II.   Reynolds's Arguments on Appeal

As the majority discusses, Reynolds makes two arguments on appeal. One of these arguments is that the BOP erred in denying Reynolds credit against his federal sentence for time served in state custody. The other is that in denying Reynolds credit, the BOP made a sentencing decision reserved to the judicial branch and thereby violated the separation of powers.

### A.   Denial of Credit Against Federal Sentence

In support of his argument that the BOP erred in denying him credit, Reynolds contends that federal authorities had primary jurisdiction, that U.S.S.G. § 5G1.3 required the *nunc pro tunc* designation, and that the BOP wrongly construed the federal judge's silence in response to the BOP's letter as an indication that the federal sentence should be served consecu-

tively. I agree with the majority that the district court did not clearly err in determining that the state had primary jurisdiction over Reynolds, and that U.S.S.G. § 5G1.3 is not applicable.

As to whether the BOP wrongly construed the federal court's silence, I agree with the majority that the BOP did not err in construing the sentencing court's silence as expressing an intent that the terms run consecutively. I write separately, however, to emphasize my concern with the statutory scheme and the consequences of the majority's holding.

In denying Reynolds's request for a *nunc pro tunc* designation, the BOP wrote, "The federal judgment was silent regarding the execution of your service. As such, multiple terms of imprisonment imposed at different times are deemed consecutive unless the court dictates otherwise." Reynolds argues that the BOP improperly construed the federal sentencing judge's silence. He writes in his brief, "There is simply no support for the BOP's conclusion that the sentencing court's silence denoted an intent for consecutive terms of imprisonment."

The BOP construes a federal judge's silence at the time of sentencing to indicate that the judge intends the federal sentence to be consecutive to a yet-to-be-imposed sentence. As I noted above, the third sentence of § 3584(a) provides a rule of construction for a sentence imposed by a federal judge. The third sentence provides, "Multiple terms of imprisonment imposed at different times run consecutively unless the [federal] court orders that the terms are to run concurrently." As discussed above, a broad but permissible reading of this third sentence is that it includes not only a situation in which the federal term of imprisonment is imposed after a previously imposed term of imprisonment that is still being served, but also a situation in which the other term of imprisonment is yet to be imposed. In Program Statement 5880.28, the BOP has so interpreted this sentence. Section 3(e) of Program Statement 5880.28 provides, "On occasion, a federal court will

order the federal sentence to run concurrently with or consecutively to a not yet imposed term of imprisonment. . . . If the federal sentence is silent, or ordered to run consecutively to the non-existent term of imprisonment, then the federal sentence shall not be placed into operation until the U.S. Marshals' Service or the Bureau of Prisons gains exclusive custody of the prisoner."

In jurisdictions where the federal sentencing judge has the authority to choose between a federal sentence that will run concurrently with or consecutive to a yet-to-be-imposed sentence, the operation of § 3584(a) and Program Statement 5880.28 is quite straightforward. The BOP can look to the sentencing proceeding in federal court, apply the rule of construction provided by the third sentence of § 3584(a) and the Program Statement, and determine the intent of the federal sentencing judge. Those jurisdictions include the Fifth, Eighth, Tenth and Eleventh Circuits. *See Mayotte*, 249 F.3d at 798-99; *Williams*, 46 F.3d at 58-59; *Ballard*, 6 F.3d at 1510; *Brown*, 920 F.2d at 1217.

But in jurisdictions where the federal sentencing judge does not have the authority to choose between a concurrent and consecutive sentence with respect to a yet-to-be-imposed sentence, the rule of construction cannot be sensibly applied to what the judge says, or does not say, at the time of sentencing. Those jurisdictions include the Second, Fourth, Sixth, Seventh and Ninth Circuits. *See Donoso*, 521 F.3d at 149; *Smith*, 472 F.3d at 225-26; *Taylor*, 284 F.3d at 1148 (citing *Neely*, 38 F.3d at 460-61; *Clayton*, 927 F.2d at 492); *Romandine*, 206 F.3d at 737-38; *Quintero*, 157 F.3d at 1039-40. In those jurisdictions, it makes little sense to rely on the silence of the federal sentencing judge at the time of sentencing to determine that judge's intent in choosing whether the federal sentence is to be concurrent or consecutive, because the judge in those jurisdictions has no authority to make that choice at the time of sentencing. Thus, there is no reason for the judge to say anything. Even if the judge would like to impose a concurrent

sentence, a statement to that effect would have no legal conse-
quence.

In a situation where a request for a *nunc pro tunc* designa-
tion is made, the subsequent state sentence has already been
imposed. At least in a jurisdiction in which the federal judge
has no authority to choose between a concurrent and consecu-
tive sentence at the time of sentencing, the BOP sends a letter
asking the judge whether he or she now wants the federal sen-
tence to run concurrently or consecutively. *See* Program
Statement 5160.05 § 9(b)(4)(c) ("In making the determination
[whether to grant a request for *nunc pro tunc* designation] the
[Regional Inmate Systems Administrator of the BOP] will
send a letter to the sentencing court . . . inquiring whether the
court has any objections [to the designation]."). This request
by the BOP allows the federal sentencing judge in such juris-
dictions, after the state sentence has been imposed, to say
whether the federal sentence should be concurrent or consecu-
tive. (The record before us is not clear on the point, but it is
possible that the BOP asks the federal sentencing judge this
question in all jurisdictions, even those jurisdictions in which
the judge has the authority, at the time of sentencing, to
choose whether the sentence would be concurrent or consecu-
tive. *But see id.* § 9(b)(4)(e) ("No letter need be written if it
is determined that a concurrent designation is not appropri-
ate.").) Once the BOP receives a response from the federal
sentencing judge, it takes that response into account in decid-
ing whether to grant the *nunc pro tunc* request. *See id.* § 9(a)
("Concurrent service of federal and non-federal sentences in
a non-federal institution occurs when the [BOP] designates a
non-federal institution for service of the federal sentence.");
9(b) ("Normally, designating a non-federal institution for the
inmate is done when it is consistent with the federal sentenc-
ing court's intent.").

In Reynolds's case, the federal sentencing judge responded
to the BOP's letter by stating that he had no comment on
whether the federal sentence should be concurrent or consecu-

tive. In its denial of Reynolds's request, the BOP construed the judge's silence as an indication that the federal sentence should be served consecutively. The BOP's statement did not cite § 3584(a) but tracked both its language and its rule of construction. In implicitly relying on § 3584(a) in construing the judge's silence, the BOP construed the third sentence of § 3584(a) to include not only the judge's silence at the time of imposing sentence, but also his later silence when asked whether a *nunc pro tunc* designation was appropriate. That is, the BOP construed the phrase "unless the [federal] court orders that the terms are to run concurrently" to apply not only to silence at the time of sentencing but also to silence in response to a letter of inquiry from the BOP. This broad reading of the third sentence of § 3584(a) is not an implausible construction. I would therefore conclude that the BOP acted properly in construing the sentencing judge's answer to the BOP's letter, in which the judge refused to express a preference, as an indication that a consecutive sentence was appropriate.

## B.  Separation of Powers

Reynolds argues that in denying him credit towards his federal sentence for time served on his state sentence, the BOP violated the separation of powers. Reynolds first contends that the BOP could not disregard the express view of the state court judges that his state sentences should be served concurrently with his federal sentence. I agree with the majority that this argument—in reality a federalism rather than separation of powers argument—is foreclosed by our decision in *Taylor*. We considered the full range of federalism arguments in *Taylor* when we held that the federal government is not obliged to give effect to the sentencing intentions of state court judges. *See* 284 F.3d at 1151-53.

Reynolds also contends that in denying a *nunc pro tunc* designation, the BOP arrogated unto itself a sentencing decision that properly belongs to the federal judiciary. The major-

ity declines to address this argument. It holds that any separation of powers arguments about the BOP's *nunc pro tunc* authority are not properly before the court because the BOP (initially) declined to grant a *nunc pro tunc* designation in this case, and that the arguments are foreclosed by *Taylor* in any event. The petitioner in *Taylor*, however, did not argue that the BOP's practice of granting and denying *nunc pro tunc* designations violated separation of powers, and our decision in his case did not purport to decide that issue. I therefore regard the separation of powers issue as presenting an open question in this circuit.

I agree with the majority that, on the record before us, the separation of powers question is not squarely presented in this case. However, because the majority's opinion and our decision in *Taylor* may be erroneously read as foreclosing a separation of powers argument, I write separately to discuss the argument, and to join other circuits in requesting that Congress address the issue through legislation.

Two of our sister circuits have addressed the separation of powers argument and have voiced doubts about the constitutionality of the BOP's practice. In *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005), the Second Circuit wrote:

> A separation of powers issue arises when the same branch of government that prosecutes federal prisoners determines concurrency in lieu of the judge. Federalism concerns are implicated because the federal BOP is given the effective authority to enforce (or not) a state court's determination that a state sentence should run concurrently. Given the divergent readings of the statutory scheme in the various circuits, the open questions as to how to treat prisoners sentenced first in the federal and then in the state court, and the phenomenon (in some circuits) that neither the state nor the federal court can run these

concurrently, we respectfully invite congressional
consideration of these statutes.

*See also Fegans v. United States*, 506 F.3d 1101, 1104 (8th
Cir. 2007) ("[W]e agree with the Second Circuit that Con-
gress should examine the issue because it implicates impor-
tant federalism and separation of powers concerns . . . ."
(citing *Abdul-Malik*, 403 F.3d at 76)).

The separation of powers argument is stated in summary
form in the first sentence of the passage just quoted from the
Second Circuit's decision in *Abdul-Malik*. In a slightly more
expanded form, the argument is as follows: The task of the
executive branch of the federal government is to prosecute
those accused of federal crimes and incarcerate those who are
convicted and sentenced to prison terms. The task of the judi-
cial branch is to preside over criminal proceedings and
impose sentence upon those who are convicted. A decision
whether a federal sentence should run concurrently or consec-
utively is a sentencing decision that should be made by a
member of the judicial branch. A decision whether to grant a
*nunc pro tunc* designation has the effect of determining
whether a federal sentence is served concurrently or consecu-
tively. Therefore, a decision whether to grant a *nunc pro tunc*
request is a sentencing decision that properly belongs to a
member of the judicial branch. The BOP is part of the execu-
tive branch, so a decision whether to grant a *nunc pro tunc*
request does not properly belong to the BOP.

There is a great deal not to like about the *nunc pro tunc*
procedure followed by the BOP. It is a jerry-built, *ad hoc* sys-
tem imposed upon the BOP by the Third Circuit in *Barden*,
based on a questionable reading of 18 U.S.C. § 3621(b). One
may easily understand what prompted the Third Circuit's
decision in *Barden*: Without *Barden* or something like it,
some federal prisoners would serve consecutive federal and
state sentences despite the fact that both the federal and state
sentencing judges desired to impose concurrent sentences. But

6842          REYNOLDS v. THOMAS

under *Barden*, an important sentencing decision may be made
by the executive rather than the judicial branch.

On the facts of the case before us, I would hold that there
has been no separation of powers violation. In this case, the
BOP asked the federal sentencing judge whether he wanted
Reynolds's sentence to be concurrent with or consecutive to
the state sentences. When the federal judge declined to state
a preference, the BOP used a permissible rule of construction,
based on § 3584(a), to conclude that the federal judge's
silence meant that Reynolds's sentence should be consecutive.
(Later, following another *nunc pro tunc* request by Reynolds,
the BOP again solicited the federal judge's view. The judge
expressed that he had "no objection," and the BOP granted
the request.) In this circumstance, I would conclude that the
BOP's earlier denial of Reynolds's request for a *nunc pro
tunc* designation was based on a permissible interpretation
of what the federal sentencing judge intended, and that its denial
thus did not violate separation of powers.

However, I note that, in responding to *nunc pro tunc*
requests, the BOP may not always abide by the intentions of
federal sentencing judges. For example, BOP Program State-
ment 5160.05 § 9(b) provides, "*Normally*, designating a non-
federal institution for the inmate is done when it is consistent
with the federal sentencing court's intent." (Emphasis added.)
The word "normally" indicates that the BOP will usually, *but
not always*, abide by the preference of the federal sentencing
judge. Further, in its letter to Reynolds's federal sentencing
judge, the BOP wrote, "It is the preference of the Bureau that
the Federal Sentencing Court be given an opportunity to state
its position with respect to a retroactive designation, which,
*while not binding*, can be helpful in our determination to grant
or deny the request." (Emphasis added.) The BOP's use of the
phrase "while not binding," indicates that the BOP does not
believe that it is required to abide by the preference of the
sentencing judge. Finally, it is possible that at least in some
circumstances the BOP does not solicit the view of the federal

sentencing judge at all. *See* Program Statement 5160.05
§ 9(b)(4)(e) ("No letter need be written [to the sentencing
judge] if it is determined that a concurrent designation is not
appropriate."). However, we do not have before us a case in
which the BOP has not solicited the view of the sentencing
judge or, having done so, has disregarded that view.

## III.   Request to Congress

In view of the questionable interpretation of § 3621(b) on
which *Barden* was based, the ambiguity of 18 U.S.C.
§ 3584(a), and the serious constitutional questions posed by
the BOP's *nunc pro tunc* practice implemented pursuant to
*Barden*, I would join the Second and Eighth Circuits in
respectfully requesting Congress to give its careful attention
to the issues raised by the imposition of overlapping federal
and state sentences.